UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

NATIONAL FIRE & MARINE ) 
INSURANCE COMPANY, )
 )
    Plaintiff/Counterclaim Defendant, )
 )
vs. )    Case No.   5:16-cv-00451-HNJ
 )
CALVIN D. WELLS, JR., )
 )
    Defendant/Counterclaim Plaintiff )
 )

## MEMORANDUM OPINION AND DISMISSAL ORDER

This civil action proceeds before the court on Plaintiff/Counterclaim Defendant National Fire & Martine Insurance Company's ("National Fire") Motion for Summary Judgment [1] (Docs. 18, 19, and 21) and National Fire's Motion to Strike Defendant/Counterclaim Plaintiff's Untimely Responses to Requests for Admission & Untimely Filed Supplemental Response with Affidavits. (Doc. 36). In lockstep with his prosecution of this case, Defendant/Counterclaim Plaintiff Calvin D. Wells, Jr., ("Wells") tendered an untimely and brief argument and a request for an extension of time to respond more fully to the summary judgment motion, followed by even more sparse filings that the undersigned will discuss. (Doc. 26).

---

[1] Plaintiff also requested oral argument in this action, and Defendant opposes the request. However, the court can decide the issues presented with the aid of the parties' written submissions alone, and thus, oral argument is unnecessary in this case. Accordingly, to the extent that it may be construed as a motion, the court DENIES the request for oral argument.

Based upon the following discussion, the court **GRANTS** National Fire's Motion to Strike, **DENIES** Wells's request for more time to respond to National Fire's Motion for Summary Judgment, **GRANTS** National Fire's request for the court to strike Wells's untimely response to National Fire's Motion for Summary Judgment (Doc. 29), and **GRANTS** National Fire's Motion for Summary Judgment.

BACKGROUND

The undersigned sets forth the following facts for the summary judgment determination, drawn from the evidence taken in the light most favorable to Wells.[2]

Defendant/Counterclaim Plaintiff Calvin D. Wells, Jr. d/b/a Wells Poultry Farm ("Wells") owns and operates eleven (11) poultry houses in Cullman County, Alabama. Wells purchased the houses from his father, C.D. Wells, in 2007. On or about July 6, 2014, Wells purchased a Commercial Lines Policy of Insurance ("Policy") from Plaintiff/Counterclaim Defendant National Fire & Marine Insurance Company ("National Fire"). Defendant timely paid premiums on the Policy, and the Policy remained in effect until July 6, 2015.

On or about March 3, 2015, Wells filed a claim with National Fire alleging that ice and snow from a February 25, 2015, snowstorm damaged his poultry houses. Wells

---

[2] In considering a motion for summary judgment, the court views the facts in a light most favorable to the non-moving party. However, the court gathers the facts largely from Plaintiff's motion because Wells failed to provide timely responses to support his factual assertions, and unsupported factual assertions cannot defeat or establish entitlement to summary judgment. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002).

stated that the storm's effects caused the buildings to lean, which purportedly constituted a covered casualty loss under his Policy with National Fire. Upon receiving Wells's claim, National Fire retained Rimkus Consulting Group, Inc. ("Rimkus") to inspect Wells's poultry houses.

On March 12, 2015, engineer Kyle E. Parker, P.E. performed the inspection on Wells's property. During his inspection, Parker also interviewed Wells, reviewed County Property Appraiser records, reviewed applicable portions of the 1999 Accepted Practices for Post-Frame Building Construction, reviewed historical weather data from the National Weather Service and Weather Underground at their respective websites, and reviewed aerial photographs of the poultry houses dated March 5, 1997.

On March 26, 2015, Parker issued his findings in a report for National Fire. (Doc. 21-4). His report concluded that: (1) the poultry houses leaned up to approximately 1.75 inches in 4 feet; (2) there existed no evidence that the leaning condition of the chicken houses occurred recently; (3) he did not determine the degree that the weight of snow and ice accumulation on February 26, 2015, exacerbated the pre-existing leaning condition of the chicken houses; (4) no evidence indicated that wind forces on February 26, 2015, caused or contributed to the leaning condition of the chicken houses; (5) the lack of a foundation and inadequate anchoring of the posts into the ground contributed to the lean; and (6) there existed prior, wind-related lifting of purlins from the roof trusses along the eaves of the poultry houses. (Doc. 21-4 at 14).

The Policy specifically excludes damage caused by or resulting from "earth shifting including soil conditions which cause settlings, cracking or other disarrangement of foundations or other parts of reality." (Doc. 21-6 at 3). The Policy also excluded damage caused by or resulting from wear and tear, deterioration, decay or hidden or latent defect or any quality in property that causes it to damage or destroy itself. (*Id.*) Utilizing Mr. Parker's report, along with its own investigative findings, National Fire denied Wells's claim on May 1, 2015. (Doc. 1-2).

As additional bases for the denial, National Fire determined that the poultry houses were constructed as of March 5, 1997, as verified by a satellite photo from the U.S. Geological Survey. National Fire informed Wells that its policy excludes loss or damage caused by, or resulting from, the weight of snow, ice, or sleet for buildings whose age exceeds fifteen (15) years.

After Wells requested a review of the decision, National Fire reopened the investigation on July 15, 2015. On July 22, 2015, Parker revisited Wells's property to inspect the poultry houses. Parker utilized the same resources when inspecting the property, and he reached the same conclusions.

Pursuant to the Policy's terms and conditions, National Fire conducted an examination under oath of Wells on October 14, 2015. During the examination, Wells clarified that his claim only involved five of the poultry houses ("5B houses") and provided documentation of the deed to the houses, the property taxes he filed on the

houses, and an estimate from Addison Agri Builders regarding the replacement costs of the houses. National Fire requested in the notice scheduling the examination provision of any documents regarding the original construction of the poultry houses, as well as any repairs, remodeling, additions, or changes to any of the poultry houses, yet Wells failed to provide any documentation. In addition, Wells contested Parker's analysis regarding the installation of the posts.

**PROCEDURAL HISTORY**

On March 18, 2016, National Fire filed a complaint for declaratory judgment against Wells, requesting that the court find no coverage exists for Wells's claims under the insurance policy. (Doc. 1). On April 14, 2016, Wells filed an Answer and a Counterclaim, alleging that National Fire wrongfully denied his claims, and thus, breached the insurance contract. (Doc. 5). After the parties convened a Rule 26(f) Planning Meeting, they released a report to the court on May 31, 2016. (Doc. 11).

The court issued a Rule 16 Scheduling Order on June 8, 2016. (Doc. 12). The scheduling order contained crucial deadlines that the parties stipulated, including:

- Unless modified by stipulation of the parties, disclosure of expert witnesses—including a complete report under Fed.R.Civ.P. 26(a)(2)(B) from any expert—are due: (1) from plaintiff by **February 28, 2017**, and made available for deposition by **April 14, 2017**; (2) from defendant by **December 15, 2016,** and made available for deposition by **January 30, 2017**.

- Unless modified by court order for good cause shown, all discovery must be commenced in time to be completed by **May 31, 2017.**

- All potentially dispositive motions must be filed by **June 30, 2017.**

- Unless modified by stipulation of the parties, responses to Requests for Production and Requests for Admission are due **30 days after service.**

- Unless modified by court order for good cause shown, supplementation of disclosures and discovery under Fed.R.Civ.P. 26(e) are due within **30 days of party having obtained knowledge of the discoverable information,** but not later than 30 days prior to close of discovery.

(emphasis added). Furthermore, the parties agreed to exchange initial disclosures, as required by Federal Rule of Civil Procedure 26(a)(1)[3], by June 30, 2016, and in its efforts

---

[3] Federal Rule of Civil Procedure 26(a)(1) states, in pertinent part:

(a) REQUIRED DISCLOSURES.

(1) *Initial Disclosure.*

(A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

to prosecute its claims and defenses, National Fire served Requests for Production of Documents on October 31, 2016. (Doc. 14).

Importantly, National Fire served Requests for Admission on April 28, 2017. (Doc. 16). The discovery consisted of the following requests:

1. Admit that damage, if any, to any of the 5B poultry houses was not caused by direct physical loss or damage occurring during the National Fire & Marine Insurance Company policy period of July 6, 2014 through July 6, 2015.

2. Admit that to the extent there is any damage to any of the 5B poultry houses, said damage is a result of wear and tear, deterioration, settling, cracking, shrinking, lack of a proper foundation or inadequate anchoring.

3. Admit that all of the 5B poultry houses were built prior to March 5, 1997.

4. Admit that Calvin Wells has no evidence any of the 5B poultry houses were built after March 5, 1997.

5. Admit that there was snow in the area of the 5B poultry houses on February 25, 2015.

6. Admit that Calvin Wells has no evidence to rebut the fact that all of the 5B poultry houses were in existence and referenced in the property appraisal performed by Ray Brannum on November 3, 2000, referenced in the Initial Disclosures served by National Fire & Marine Insurance Company in this case.

7. Admit that the 5B poultry houses are still in use as of the date of service of this document upon Calvin Wells's attorney.

(*Id.*).

On June 30, 2017, National Fire filed its Motion for Summary Judgment. In its motion, National Fire stated that Wells had not (1) filed initial disclosures, (2) produced responses to its Requests for Production, (3) disclosed expert witnesses, and (4) objected and/or responded to the Requests for Admission. On August 4, 2017, National Fire filed a reply, arguing the court should grant its summary judgment motion because Wells failed to file a response.

On August 7, 2017, Wells filed an untimely response to National Fire's summary judgment motion, stating that Wells's counsel had only "in the last days" received the motion, and, counsel did not see the motion on his computer. (Doc. 26). In addition to a "request" to more fully respond to the motion, Wells submitted: (1) the transcript and additional exhibits from the examination under oath that National Fire took of Wells (National Fire already submitted most of the material as "Exhibit A" to its summary judgment motion); and (2) a depreciation detail listing of CD Wells's 2003 tax return. In his response, Wells further alleges that aerial photographs and his testimony reveal that the poultry houses were rebuilt in approximately 2002, as the depreciation detail allegedly portrays an update and equipment expenses for 2003. Wells also argues that he installed cement around the posts in his poultry houses.

On August 9, 2017, National Fire filed a reply in opposition to Wells's response. (Doc. 29). In its reply, National Fire argues that Wells failed to altogether provide any initial disclosures. In addition, Wells never provided C.D. Wells's 2003 depreciation record during his examination under oath, in initial disclosures, or in responses to the Requests for Production.

Furthermore, National Fire highlights that Wells failed to meet all discovery deadlines set forth in the parties' Rule 16 Scheduling Order. At the time National Fire filed this reply, Wells had provided no expert report, no written discovery, no requests for depositions, no responses to National Fire's Requests for Production, and no responses to National Fire's Requests for Admissions. National Fire concluded that the court should deny Wells's "request" for an extension of time to respond to the summary judgment motion.

On October 2, 2017, Wells filed responses to National Fire's April 28, 2017, Requests for Admission. (Doc. 30). In his responses, Wells stated a general objection to the Requests for Admission on the grounds that the requests were "vague, ambiguous, overly broad, unduly burdensome or oppressive" and that they were not sufficiently descriptive so as to allow Wells the opportunity to lodge a meaningful response. Furthermore, Wells included this additional paragraph in his response:

> 1-7. Wells objects to these requests in that they are not sufficiently descriptive so as to allow Wells to make a meaningful response. Without waiving said objection, Wells

> denies paragraphs 1 through 7, that is all of the Request for
> Admissions. Wells has testified and states that the poultry
> houses were rebuilt after 1997 and even logic would state
> that the houses did not deteriorate at the same time and lean
> in the same direction.

On October 20, 2017, Wells filed a supplemental response to National Fire's motion for summary judgment. (Doc. 31). The response consisted of an affidavit from Barry Willingham, the Revenue Commissioner for Cullman County, and an affidavit from Faye Cobbs, a purported IRS Enrolled Agent who also served as C.D. Wells's tax preparer. (Docs. 32-1 and 32-2).

On November 1, 2017, National Fire filed a Motion to Strike Wells's untimely responses to the Requests for Admission and his untimely filed supplemental response with affidavits. (Doc. 36). On November 2, 2017, the court issued a briefing schedule for National Fire's Motion to Strike, ordering Wells to file a response within fourteen days and National Fire to file any reply within seven days thereafter. (Doc. 36). Wells never filed a response.

## ANALYSIS

### A.    National Fire's Motion to Strike

Before adjudicating the Motion for Summary Judgment, the court addresses National Fire's Motion to Strike to determine whether Wells may rely upon specific evidence presented in his filings opposing summary judgment.

Specifically, National Fire argues that the court should strike (1) Wells's untimely responses to Plaintiff's Requests for Admission and (2) Wells's untimely filed supplemental response with affidavits. Based upon the following discussion, the court **GRANTS** National Fire's motion on both grounds.

1.   *The Court Deems National Fire's Requests for Admission as Admissions by Wells Dues to Wells Failure to Timely Respond to Them.*

Federal Rule of Civil Procedure 36(a) enables any party to "serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." The Rule automatically deems unanswered or belatedly-answered responses to Rule 36 requests as admissions:

> A matter [of which an admission is requested] is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed. R. Civ. P. 36(a)(3).

Courts in this circuit routinely treat unanswered or belatedly-answered requests as legally-conclusive admissions. *See, e.g., Garmely v. Cochran,* 651 Fed. Appx. 933, 936 (11th Cir. 2016)(citing *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002)). Because Wells failed to respond to National Fire's requests for admission within 30 days

(indeed, more than five months after service of the requests), and did so without permission from the court or stipulations by National Fire, Rule 36(a)(3) automatically deems National Fire's requests as admissions.

Rule 36(b) provides that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). The court allows withdrawal or amendment "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id*; *see also Smith v. First Nat'l Bank of Atlanta,* 837 F.2d 1575, 1577(11th Cir. 1988). Here, Wells filed no motion to withdraw or to amend his automatically deemed admissions, but instead filed his responses months after the deadline set in the parties' Scheduling Order. Furthermore, Wells has not addressed the issue in any of his responses and even failed to respond, pursuant to the court's order, to National Fire's Motion to Strike. As Rule 36(b) expressly provides for withdrawal only "on motion," the court cannot *sua sponte* withdraw Wells's admissions. *See Jacobs v. Electronics Data Systems Corp.*, No. 2:05-CV-925-MHT, 2006 WL 3742202, *2 (M.D. Ala. Dec. 18, 2006)(citing *Am. Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991)).

However, even if the court construed Wells's untimely responses as a motion to withdraw his admissions, he fails the two-part test that governs this type of entreaty.

This test focuses on the effect upon the litigation and prejudice to the resisting party, rather than the moving party's justifications or lack thereof. *Burch v. P.J. Cheese, Inc.*, No. 2:09-CV-1640-SLB, 2011 WL 13233278, *2 (N.D. Ala. Aug. 17, 2011). "First, the court considers whether the withdrawal will subserve the presentation of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case." *Perez v. Miami-Dada County*, 297 F.3d 1255, 1264 (11th Cir. 2002), *cert. denied*, 537 U.S. 1193 (2003). This two-part test specifies the limits of the district court's discretion in permitting the withdrawal of admissions. *Id.* at 1265-66. A withdrawal subserves the presentation of the merits "when it aids in the ascertainment of truth." *Id.* at 1266. The "prejudice" that Rule 36 contemplates "relates to the difficulty a party may face in proving its case," and a party is more likely to experience prejudice as time passes. *Id.* at 1266-67.

Here, Wells fails to meet the two-part test for withdrawing his admissions. The first part of the test "emphasizes the importance of having the action resolved on the merits." *Perez*, 297 F.3d at 1266 (quoting *Smith*, 837 F.2d at 1577). The moving party satisfies this part of the test "when upholding the admissions would practically eliminate any presentation of the merits of the case." *Id.* at 1266 (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). For example, in *Perez*, the Eleventh Circuit found that the party satisfied the first part of the test because the items the district court deemed admitted "took the wind out of the defendants' sails" and "conclusively established the

liability of both defendants under 42 U.S.C. §1983." *Id.* In *Hadley*, the Ninth Circuit found that the moving party satisfied the first part of the test because the admissions "essentially admitted the necessary elements" of the plaintiff's claims. 45 F.3d at 1348. Additionally, in *Harden v. Target Corp.*, No. 09-60010-CIV, 2009 WL 1456349 (S.D. Fla. May 22, 2009), the court found that the first part was satisfied because the admissions related to matters "highly significant, if not central, to . . . [the] litigation." *Id.* at *2.

National Fire's Requests for Admission asked Wells to admit, *inter alia*, that any damage that occurred to the 5B houses was not caused by direct physical loss or damage during his insurance policy period, that any damage that did occur was a result of wear and tear, that the 5B houses were built prior to March 5, 1997, that Wells has no evidence that the 5B houses were built after March 5, 1997, that there was snow in the area of the houses on February 25, 2015, that he has no evidence to rebut the fact that the 5B houses were in existence as of November 3, 2000, and that the 5B houses are still in use as of today. These requests ask Wells to admit all essential elements regarding National Fire's declaratory judgment claim, and, by incorporation, Wells's breach-of-contract claim. Furthermore, as in *Harden*, those requests for admission that do not seek admission of essential elements *do* relate to matters that are "highly significant, if not central, to this litigation." 2009 WL 1456349 at *2.

These requests, if deemed admitted, strongly bolster National Fire's position on the merits, and withdrawal or amendment of the admissions would undoubtedly aid in

the "ascertainment of the truth and the development of the merits." *Smith*, 837 F.2d at 1577; *see also Burch*, 2011 WL 13233278 at *3 (holding that defendant's deemed admissions to plaintiff's requests that asked defendant to admit several essential elements of plaintiff's claims brought pursuant to Title VII, FMLA, EPA, and 42 U.S.C. §1981 satisfied the first part of the test).

Nevertheless, Wells falters miserably on the second part of the test. National Fire demonstrated that it would be prejudiced by allowing Wells to amend his deemed admissions to the requests after discovery. The Eleventh Circuit explained the nature of prejudice that the test contemplates:

> The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to questions previously answered by the admissions.

*Perez*, 297 F.3d at 1266 (quoting *Brook Village N. Assoc. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)). National Fire must persuasively demonstrate that it will unfairly face evidentiary burdens stemming from the process of possessing and then losing the admissions. *See ADM Agri-Industries, Ltd. v. Harvey*, 200 F.R.D. 467, 471 (M.D. Ala. 2001). Significantly, Wells served his responses after the end of the discovery period on May 31, 2017, and after National Fire filed a motion for summary judgment on June 30, 2017, utilizing Wells's deemed admissions. Not only did Wells fail to file any type of

motion to withdraw these deemed admissions, but he also has offered no defense, reason, or excuse for the late submission of his responses.

Wells's conduct has also caused uncertainty and delay for National Fire. In his examination under oath, Wells refused to answer certain questions pertaining to the matters at issue in this case. He served no initial disclosures or responses to National Fire's Request for Production of Documents, essentially prejudicing National Fire as to disclosure of Wells's witnesses and potential trial exhibits. Over five months after its due date, Wells simply files his responses to National Fire's Requests for Admission with no explanation for the untimeliness and delay.

Applying the reasoning that the Middle District of Alabama elaborated in *ADM Agri-Industries v. Harvey*, "had [Wells provided] any plausible explanation for his past discovery noncompliance and any reason to think that his uncooperativeness has now come to an end, the court might be more inclined to find that [National Fire] has not carried its burden to show prejudice from the withdrawal or amendment of the admissions." 200 F.R.D. at 472. However, because Wells never gave the court a viable explanation for his past discovery noncompliance, and because Wells failed to respond to a court order that directed him to respond to National Fire's Motion to Strike, the court sees no reason to grant Wells the benefit of the doubt regarding his late discovery response.

National Fire would suffer undue prejudice without the admissions; without their deterrent value, National Fire would have to inefficiently retrace its steps and re-litigate its summary judgment argument. Therefore, the court **GRANTS** National Fire's Motion to Strike regarding Wells's untimely responses to National Fire's Request for Admissions and **STRIKES** Wells's responses from the record.

2. *Wells's Untimely Filing of Barry Willingham and Faye Cobbs's Affidavits was not Substantially Justified or Harmless.*

As discussed previously, Rule 26(a)'s mandatory, initial disclosures provision requires parties to disclose the witnesses and documents they intend to use at trial in support of their contentions. If a party fails to discharge its discovery obligations, it may not "use [undisclosed] information or witness[es] to supply evidence on a motion, at a hearing, or at trial, unless the failure was **substantially justified or is harmless**." Fed. R. Civ. P. 37(c) (emphasis added). The court considers four factors under Rule 37(c) to determine whether failure to disclose evidence is harmless or justified: "(1) the unfair prejudice or surprise of the opposing party; (2) the opposing party's ability to cure the surprise; (3) the likelihood and extent of disruption to the trial; and (4) the offering party's explanation for its failure to timely disclose the evidence." *King v. Passmore*, 2:16-cv-00192-JEO, 2017 WL 5202866, *2 (Apr. 17, 2017)(internal citations omitted). As the non-disclosing party, Wells must establish that his failure to disclose both Willingham and Cobbs's affidavits was substantially justified or harmless. *See Edwards v.*

*National Vision, Inc.*, 946 F. Supp. 2d 1153, 1159 (N.D. Ala. 2013). In this case, Wells fails his burden.

Wells has not complied with Rule 26(a)'s requirement for mandatory, initial disclosures, and he failed to provide responses to National Fire's document requests. Similar to the filing of his responses to National Fire's Requests for Admission, Wells provided no explanation for his tardiness in submitting the Willingham and Cobb affidavits months after the discovery deadline expired.

Furthermore, this court cannot classify Wells's failure to timely file these affidavits as harmless. Cobbs's affidavit purportedly contained important information regarding Wells's father's tax filings for the eleven poultry houses. Willingham's affidavit purportedly contained relevant opinion evidence regarding the overhead photos of Wells's poultry houses.[4] Had National Fire known about this information in a timely manner, it would have possessed the opportunity to depose both individuals. Both affidavits are dated October 17, 2017, well after the deadline for discovery and nearly four months after National Fire filed its motion for summary judgment without any knowledge of Willingham or Cobbs.

National Fire properly filed a motion to strike these affidavits, and Wells chose to not respond to National Fire's motion. Wells offers no substantial justification for his untimely filings, and this court finds none in the record. Accordingly, the court

---

[4] The court cautiously describes the affidavits' gravamen because Wells never subjected them to the crucible of adversarial litigation, and thus, their assertions deserve scant regard.

**GRANTS** National Fire's Motion to Strike the affidavits of Barry Willingham and Faye Cobbs and **STRIKES** the affidavits and accompanying exhibits from the record.

### B. The Court Grants National's Fire's Motion to Strike Wells's Summary Judgment Response

The court must also determine whether it should grant Wells's "request" to permit an untimely response to the summary judgment motion (Doc. 26), or deny Wells's "request" by granting National Fire's motion to strike Wells's late response (Doc. 29). As an initial matter, the court notes that Wells not only filed an initial untimely response containing its "request" (Doc. 26), it did not await any adjudication by the court as to the "request" and filed another response containing the affidavits the court struck in the previous section (Doc. 31). Therefore, the court discerns the parties' entreaties as whether it should permit or strike Wells's responses, even though the later response constitutes a nullity because the court struck the affidavits at its heart. In any event, the court cannot excuse Wells's abject failure to prosecute this action, and thus, strikes its summary judgment responses.

Federal Rule of Civil Procedure 6(b) governs extensions of time in which to file motions and responsive documents. Under Rule 6(b)(1)(B), when an act is required or allowed to be done within a specific time period, the Court "may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1)(B); *Fisher v. Office of State Att'y 13th Judicial Circuit Fla.*, 162 Fed. Appx. 937, 940 (11th Cir. 2006)("Rule 6(b) specifically

contemplates that a party can obtain an extension of time even after missing a deadline."). In the context of responding to a motion for summary judgment, absent an affirmative showing by the non-moving party of excusable neglect according to Rule 6(b), a court does not abuse its discretion when it refuses to accept out-of-time responses. *See Ojeda v. Louisville Ladder, Inc.*, 410 Fed. Appx. 213 (11th Cir. 2010)(citing *Farina v. Mission Inv. Trust,* 615 F.2d 1068, 1076 (5th Cir. 1980)).

Excusable neglect under Rule 6(b) operates as a somewhat elastic concept, but inadvertence or mistakes construing rules do not normally constitute excusable neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380 (1993). Four factors inform the "excusable neglect" standard: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether the movant had reasonable control over the delay; and (4) whether the movant acted in good faith. *E.C. ex rel. Crocker v. Child Development Schools, Inc.*, No. 3:10-CV-759-WKW, 2011 WL 4501560, *5 (citing *Pioneer Ins. Servs. Co.*, 507 U.S. at 395).

Courts consistently hold that attorney oversight does not amount to excusable neglect. For example, in *Revere v. McHugh*, 362 Fed. Appx. 993 (11th Cir. 2010), the district court adopted the defendant's statement of facts as unopposed and granted summary judgment in favor of the defendant after the plaintiff's attorney failed to properly file exhibits in response to summary judgment. The district court denied

Revere's Rule 60(b)(1) motion for relief from judgment, and Revere appealed. On appeal, the Eleventh Circuit held that the district court did not abuse its discretion in denying the motion. Citing *Solaroll Shade and Shutter Crop. v. Bio-Energy*, 803 F.2d 1130 (11th Cir. 1986), the court emphasized that attorney oversight does not amount to a "good reason" for Rule 60(b)(1) relief "even though such a result appear[ed] to penalize innocent clients for the forgetfulness of their attorneys." *Revere*, 362 Fed. Appx. at 999 (quoting *Solaroll*, 803 F.2d at 1132).

Turning to the first factor under *Pioneer Investments*, National Fire argues that it will suffer serious prejudice if the court excuses Wells's untimely submission of his response to the summary judgment motion. The circumstances in this case tilt the merits against Wells. National Fire heavily relied on Wells's deemed admissions in its summary judgment motion. It submitted this motion fifteen months after filing the complaint and a year after the court released the Rule 16 Scheduling Order. At the time of the filing, Wells had provided no disclosures or responses required by the Scheduling Order and procedural rules. National Fire would suffer unfair prejudice if the court sustains Wells's responses to the summary judgment motion, although the court notes again the sparse, probative value of the responses. Notwithstanding the lack of probative value, the risk of prejudice for National Fire weighs in its favor on this factor.

As for the second factor regarding the delay's duration and its potential impact on efficient judicial administration, if Wells had timely opposed National Fire's Motion

for Summary Judgment on June 30, 2017, he would have completed that filing on or before July 21, 2017. Instead, Wells filed his response on August 7, 2017, three days after National Fire timely filed a reply indicating that Wells had not filed a response and missed the deadline. Although this lapse in time between the due date of Wells's opposition to National Fire's motion for summary judgment and the filing date of Wells's truncated response only spans two weeks, Wells merely asked for the court to grant "an extension of time to more fully respond to the Motion for Summary Judgment." (Doc. 26 at 1). This lack of proactive conduct on the part of Wells and continued delay tilts the second factor in favor of denying Wells's "request."

Most importantly, the reason for the delay and lack of good faith weigh heavily against Wells. The reason for delay remains critical to the inquiry regarding whether an attorney's failures constitute excusable neglect. *See Travelers Cas. and Sur. Co. of America v. Thorington Elec. & Const. Co.*, No. 2:09-CV-37-WKW, *3 (M.D. Ala. Mar. 1, 2010); *see also Demint v. Nationsbank Corp.*, 208 F.R.D. 639, 642 (M.D. Fla. 2002) ("[T]he starting point and common denominator (indeed, the *sine qua non*) in every case employing an analysis of excusable neglect is an explanation of the reason for the delay.") Here, Wells's attorney contends that his failure to respond to the motion for summary judgment stemmed from him receiving the motion "only in the last days" and that the motion "failed to be viewed" on his computer. (Doc. 26 at 1). He presents no evidence substantiating these reasons.

Further, Wells missed every single discovery deadline at the time National Fire filed its Motion for Summary Judgment. Combined with the fact Wells later submitted affidavits from two witnesses three months after the deadline for his response, these actions demonstrate a lack of good faith. This is not a case where an "innocent oversight" or "slight mistake" caused the failure to respond. *Compare Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996)(finding that a miscommunication between lawyers resulting in a six-day late filing, where there was no indication of bad faith or prejudice, constituted "excusable neglect"); *Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198, 1201-02 (11th Cir. 1999)(finding that a secretary's filing mistake resulting in a late response, where there was no indication of bad faith or prejudice, constituted "excusable neglect"). Thus, on balance, the court finds that Wells failed to demonstrate that his failure to respond to the motion for summary judgment constituted "excusable neglect." Therefore, the court **DENIES** Wells's "request" permit untimely responses to National Fire's Motion for Summary Judgment and **GRANTS** National Fire's request to strike Wells's response.

### C. National Fire Sustains Its Burden on the Summary Judgment Motion

#### 1. *Standard of Review*

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

Rule 56(a). The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant sustains its burden, a non-moving party demonstrates a genuine issue of material fact by producing evidence by which a reasonable fact-finder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation omitted). The non-movant sustains this burden by demonstrating "that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). In the alternative, the non-movant may "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116-17; *see also Doe v Drummond Co.*, 782 F.3d 576, 603-04 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1168 (2016).

The "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151 (citation omitted). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citation omitted).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. In addition, a movant may prevail on summary judgment by submitting evidence "*negating* [an] opponent's claim," that is, by producing materials disproving an essential element of a non-movant's claim or defense. *Id.* at 323 (emphasis in original).

Because National Fire bears the burden of proof on any insurance exclusions, its status as the summary-judgment movant requires that it establish no genuine dispute of

material fact as to all elements of the exclusion, and, concomitantly, that it deserves judgment as a matter of law on the exclusion. *See Fitzpatrick*, 2 F.3d 1112, 1115 (11th Cir. 1993) ("The movant must show . . . on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.")

Before examining National Fire's contentions, one need delineate the burden on the substantive claims at issue. Although National Fires seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, et seq., the substantive burdens on the underlying, coercive claim – the breach-of-contract dispute – does not shift. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, __U.S. __, 134 S. Ct. 843, 850 (2014) ("We have long considered 'the operation of the Declaratory Judgment Act' to be only 'procedural,' leaving 'substantive rights unchanged.' . . . And we have held that 'the burden of proof' is a 'substantive' aspect of a claim.") (citations omitted). Therefore, the coercive claim underlying National Fire's declaratory judgment action constitutes Wells's breach-of-contract claim, which comprises Wells's counterclaim in this case. As a result, the summary judgment analysis proceeds identically as to National Fire's declaratory judgment claim and Wells's breach-of-contract counterclaim because of the nature of declaratory judgment actions.

Under Alabama law,[5] a breach-of-contract claim requires the plaintiff to prove: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002.) "It is familiar law that a contract of insurance is essentially like all other contracts, and governed by general rules of contract." *Farmers & Merchants Bank v. Home Ins. Co.*, 514 So.2d 825, 831 (Ala. 1987) (citing *Hartford Fire Ins. Co. v. Shapiro*, 270 Ala. 149, 153-55 (Ala. 1960)).

National Fire moved for summary judgment on its declaratory judgment action and on Wells's breach-of-contract counterclaim. Wells's answers and admissions to National Fire's Requests for Admission, combined with National Fire's evidentiary submissions, portray no genuine dispute of material fact, and, National Fire is entitled to judgment as a matter of law.

> 2.    *Wells Provides No Evidence that any Direct Physical Loss or Damage Occurring during the Policy Period Caused the Alleged Damage to the 5B Houses.*

Wells's claim states that his poultry houses leaned about six inches due to the weight of ice and snow from a February 25, 2015, snowstorm. (Doc. 21-3). National Fire argues that Wells cannot prove that any direct physical loss or damage commencing during the policy period caused the alleged damage to his poultry houses. National Fire prevails on its summary judgment as to this issue.

---

[5] Alabama law governs the parties' claims as a breach-of-contract action underlies the declaratory action, and of course Wells's counterclaim invokes state law.

An insured or claimant seeking to recover benefits under an insurance policy must establish that the damage alleged in the claim falls within the policy's coverage. *See Parker v. J.C. Penney Life Ins. Co.*, 980 So.2d 409, 413 (Ala. 2007)(quoting *State Farm Fire & Cas. Co. v. Shady Grove Baptist Church*, 838 So.2d 1039, 1043-44 (Ala. 2002)). Wells assumes the burden of persuasion with respect to the issue of coverage under Alabama law. *See American Safety Indem. Co. v. T.H. Taylor, Inc*, 513 Fed. Appx. 807, 813-14 (11th Cir. 2013)(citing *Employers Mut. Cas. Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002)).

The policy central to the dispute states in pertinent part:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A. Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Doc. 13 at 29).

National Fire's first Request for Admission served upon Wells stated:

1. Admit that damage, if any, to any of the 5B poultry houses was not caused by direct physical loss or damage occurring during the National Fire & Marine Insurance Company policy period of July 6, 2014 through July 6, 2015.[6]

---

[6] Facts established by Rule 36 may support summary judgment in favor of the party securing the admissions. *See Navarre v. City of Andalusia*, No. 2:04-CV-380-SRW, 2006 WL 1731138, *2 (M.D. Ala. June 19, 2006); *Stubbs v. Commissioner of Internal Revenue Service*, 797 F.2d 936 (11th Cir. 1986). The Eleventh Circuit elaborated upon Rule 36's purpose in *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002):

> When a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly. When a party . . . uses the rule to harass the other side or, as in this case, with the

In addition to this deemed admission, as the Background illustrates Parker's reports indicate no occurrence of a direct physical loss or damage during the policy period. Therefore, the court finds no genuine dispute of material fact and that no coverage exists for Wells's claims. Although the court could stop its analysis at this point, National Fire's other arguments also support this conclusion.

---

> wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources.

*Id.* at 1268.

Admittedly, Wells attempted to oppose summary judgment with other evidence that tends to contradict the admissions. The Willingham and Cobbs affidavits seek to oppose National Fire's argument that the 5B houses are more than fifteen years old. Wells uses his father's tax return to disprove the same argument from National Fire.

However, "a party cannot rebut its own admissions by introducing evidence that contradicts it." *Jacobs v. Electronics Data Systems Corp.*, No. 2:05-CV-925-MHT, 2006 WL 3742202, *3 (M.D. Ala. Dec. 18, 2006) (citing *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001))("Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record."). A district court commits reversible error if it discounts facts that have been "conclusively established" through Rule 36 admissions, "even if it '[finds] more credible evidence of the party against whom the admissions operate.'" *Hicks v. Mercedes-Benz U.S. International, Inc.*, No. 7:08-CV-0536-LSC, 2012 WL 13024371, *2 (N.D. Ala. Jul. 2, 2012)(quoting *Williams v. City of Dothan*, 818 F.2d 755, 762 (11th Cir. 1987)). Once an issue is deemed admitted, the admission is conclusive unless withdrawn upon motion to the court. *Perez*, 297 F.3d at 1264.

Because this court has deemed National Fire's Requests for Admission as admitted, and there exists no indication that National Fire utilized Rule 36 requests to "harass" Wells or as "a weapon" "with the wild-eyed hope" that it would "fail to answer and . . . admit essential elements," the court will resolve National Fire's summary-judgment motion in light of these admissions. *Id.* at 1268.

3.    *The Policy Excludes Any Alleged Damage to Wells's 5B Houses.*

Although the insured assumes the burden of persuasion regarding coverage issues, any question involving the application of an exclusion or an assertion that the policy does not apply for some reason other than the scope of coverage shifts the burden to the insurer. *See Taylor*, 513 Fed. Appx. at 813 (listing Alabama Supreme Court cases that held the same). The Alabama Supreme Court provides:

> Exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. However, courts are not at liberty to rewrite policies to provide coverage not intended by the parties. In the absence of statutory provisions to the contrary, insurance companies have the right to limit their liability and write policies with narrow coverage. If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties.

*Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 803 (Ala. 2012) (internal quotations and citations omitted).

The insurance policy more fully describes the exclusions applicable in this case, in particular excluding any loss or damage resulting from "wear and tear"; decay and deterioration; and faulty, inadequate, or defective construction, repair, renovation, or remodeling.   (Doc. 13 at 57, 59-60.)   There exists no ambiguity in the above exclusion. Therefore, the court must enforce the exclusion as written, and exclude coverage if

National Fire demonstrates that there is no genuine issue of material fact that its policy exclusions cover any alleged damage to Wells's 5B houses.

National Fire successfully meets this burden. National Fire refers to Parker's report, where he concludes that the "lack of a proper foundation, inadequate anchoring, and age-related factors would be a cause of any leaning condition of the poultry houses." (Doc. 21-4 at 5). These findings comport with the court's reading of this exclusion, as these faults correspond to "wear and tear" of the structures and "faulty or inadequate construction." Wells's sole rejoinder to the policy-exclusion manifests as an assertion there existed cement around the posts of his 5B houses, a finding contrary to Parker's report.

In any event, National Fire's second Request for Admission conclusively established that the exclusion bars Wells's claim:

> 2. Admit that to the extent there is any damage to any of the 5B poultry houses, said damage is a result of wear and tear, deterioration, settling, cracking, shrinking, lack of a proper foundation or inadequate anchoring.

Wells's deemed admission and lack of evidence, along with National Fire's evidentiary support, confirm that this Policy exclusion applies to Wells's claim.

4. *The "Animal Confinement Coverage Limitations Based on Actual Building Age" Policy Endorsement Prohibits Coverage for Wells's Claim*

In addition, National Fire states that the Animal Confinement Endorsement in Wells's policy independently prohibits coverage of his claim. In particular, this

endorsement explicitly provides no coverage for loss or damage caused by weight of snow, ice, or sleet for animal confinement buildings that are aged more than fifteen (15) years. (Doc. 13 at 79). In Parker's report and in National Fire's denial letter to Wells, National Fire states that the aerial photos they reviewed from March 5, 1997, shows that the 5B houses existed on that particular date.[7] Even if the court reviewed the affidavits from Willingham and Cobbs on their merits, they raise no genuine issue of material fact. Neither affidavit provides evidence that disputes National Fire's finding that the original construction of the 5B homes occurred on or before March 5, 1997.[8]

Furthermore, National Fire's third Request for Admission, which this court has deemed admitted, states:

> 1. Admit that all of the 5B poultry houses were built prior to March 5, 1997.

Absent any additional evidence, the court finds that National Fire's Animal Confinement endorsement explicitly prohibits coverage for Wells's claims. Therefore, the court **GRANTS** summary judgment for National Fire on this basis as well.

---

[7] Not only does National Fire provide its own evidence to support this claim, but National Fire argues the 2003 depreciation tables Wells sought to include in its responses admitted the actual age of the 5B houses. (Doc. 29 at 2, n.1).

[8] Willingham's affidavit purportedly demonstrated that the poultry houses depicted in 1997 differ from the houses depicted in later photographs contained in county records and Google Earth results. This submissions starkly portray the shortcomings in Wells's evidence: not only did the undersigned fail to discern any appreciable distinction among the photographs, the items did not traverse the gauntlet of adversarial litigation to test their probative value.

**CONCLUSION**

For the foregoing reasons, the court **GRANTS** National Fire's Motion to Strike, **DENIES** Wells's "request" to permit an untimely-filed response to the summary judgment motion, **GRANTS** National Fire's motion to strike Wells's untimely response to National Fire's Motion for Summary Judgment, and **GRANTS** National Fire's Motion for Summary Judgment. The court will issue a final judgment in a separate order granting a declaratory judgment for National Fire.

**DONE** and **ORDERED** this 13th day of March, 2018.

_____

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE